E-FILED
Tuesday, 18 November, 2025  01:00:24 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| **JASON COCA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 23-cv-1433** |
| ) | |
| **PREWETT ENTERPRISES, INC.,** ) | |
| **d/b/a B&P ENTERPRISES,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendant Prewett Enterprises' Motion for Summary Judgment (d/e 22) and Memorandum of Law in Support (d/e 23), Plaintiff Jason Coca's Response (d/e 25), and Defendant's Reply (d/e 26). The Court finds that there is no genuine dispute of material fact as to whether Defendant retaliated against Plaintiff for exercising his rights under the Illinois Workers' Compensation Act, 820 ILCS 305/1, et seq. Therefore, Defendant's Motion for Summary Judgment (d/e 22) is GRANTED.

## I.    JURISDICTION AND VENUE

Plaintiff is and was a resident and citizen of Illinois and seeks a judgment of over $75,000. See d/e 1, pp. 1-2. Defendant is and was a Tennessee corporation with its principal place of business in Mississippi and is licensed to do and continuously and systematically does business throughout the State of Illinois. See id.; d/e 10, p. 1. Therefore, jurisdiction is proper because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

Defendant has an office in Quincy, Illinois, where Plaintiff was employed. See d/e 1, p. 1; d/e 10, p. 1. Therefore, venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. 28 U.S.C. § 1391(b)(2).

## II.    BACKGROUND

As an initial matter, the Court finds that Plaintiff's Response to Defendant's Motion for Summary Judgment complies with Local Rule 7.1(D)(2) and DENIES Defendant's Motion to Deem Defendant's Statement of Material Facts Admitted (d/e 29). The Court draws the following facts from the parties' statements of

undisputed facts. The Court discusses any material factual disputes in its analysis.

Plaintiff claims that he injured his back at work when he fell off a pickup truck foot rail on February 2, 2022. See d/e 23, p. 2; d/e 25, p. 2. Plaintiff did not complete a written incident report about the incident. See id.

Plaintiff testified that he did not know of anybody at the company who would have known he was going to make a workers' compensation claim. See d/e 23, p. 2; d/e 25, p. 3. Plaintiff also testified that, before he was terminated, he had not decided whether he was going to make a workers' compensation claim. See id. Prior to his termination, Plaintiff never explicitly threatened to file a claim for workers' compensation benefits. See id.

Plaintiff believes he was terminated on February 16, 2022, when Defendant picked up his truck, or alternatively, on February 15, 2022, when Defendant turned off his credit card and turned off his messenger chat. See id. Plaintiff was never told why he was terminated and did not file a workers' compensation claim until after his termination date. See d/e 23, p. 2; d/e 25, p. 4. No written

warning, progressive discipline, or performance counseling occurred prior to Plaintiff's termination. See d/e 25, p. 5; d/e 26, p. 4.

Josh Prewett, Defendant's Chief Operation Officer, made the decision to terminate Plaintiff. See d/e 23, p. 2; d/e 25, p. 4; see also d/e 23-4, p. 3. Dennis Etnier, Defendant's Chief Financial Officer, testified that he advised the Illinois Department of Employment Benefits that Plaintiff was terminated due to alleged theft and "not having the ability to leave his, you know, to perform his duty." See d/e 25, p. 6; d/e 26, p. 6; see also d/e 25-4, p. 9.

Prewett testified that, regarding alleged employee theft, Defendant initiates an investigation, questions the employee, and records the investigation. See d/e 25, p. 6; d/e 26, p. 4. Eitner testified that, if Defendant terminated an employee for theft, "it would be documented on what [Defendant] call[s] a personnel action form. And it would be in their permanent file or HR file." See d/e 25, p. 6; d/e 26, p. 5; see also d/e 25-4, p. 7. Defendant's agents testified that an investigation into alleged theft is ordinarily initiated within approximately two weeks of the receipt's submission. See d/e 25, p. 7; d/e 26, pp. 8-9.

Page **4** of **16**

The Personnel Action Form completed for Plaintiff's termination contains no reference to theft. <u>See</u> d/e 25, p. 6; d/e 26, p. 6. Defendant did not produce any documentation of an internal investigation into Plaintiff's gift card purchase, the alleged theft. <u>See</u> d/e 25, p. 6; d/e 26, p. 7. Eitner testified that he did not know of any documentation of Plaintiff's theft investigation. <u>See</u> d/e 25, p. 6; d/e 26, p. 8.

### III.   LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. <u>Carroll v. Lynch</u>, 698 F.3d 561, 564 (7th Cir. 2012).

When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008). "At summary judgment, 'a court may not make credibility

determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" Paz v. Wauconda Healthcare & Rehab. Ctr., LLC, 464 F.3d 659, 664 (7th Cir. 2006) (internal citations omitted).

The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (internal citation omitted)). After the moving party does so, the nonmoving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quotation and footnotes omitted).

## IV.    ANALYSIS

The Illinois Workers' Compensation Act dictates employees' and employers' rights and liabilities in the context of employment

injuries, including employees' right to file a workers' compensation claim. See 820 ILCS 305/1, et seq. The Act specifically bars employers from retaliating against employees for exercising their rights under the Act. See 820 ILCS 305/4(h).

In Kelsay v. Motorola, Inc., 384 N.E.2d 353 (1978), the Illinois Supreme Court established a cause of action for retaliatory discharge to uphold and implement the public policy set out in the Act. Id. at 357. The Seventh Circuit Court of Appeals has held that such retaliatory discharge claims can be heard in federal court. See Spearman v. Exxon Coal USA, Inc., 16 F.3d 722 (7th Cir. 1994).

"[W]hen a retaliatory discharge case governed by Illinois law is litigated in a federal court, the federal court must apply the standard of the state law to a motion for summary judgment[.]" Gacek v. Am. Airlines, Inc., 614 F.3d 298, 303 (7th Cir. 2010). An employee may recover damages for retaliatory discharge if he proves "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." Clemons v.

Mech. Devices Co., 704 N.E.2d 403, 406 (1998); see also Brooks v.

Pactiv Corp., 729 F.3d 758, 767 (7th Cir. 2013); Borcky v. Maytag

Corp., 248 F.3d 691, 695-96 (7th Cir. 2001).

"In retaliatory discharge cases, an employer is not required to

come forward with an explanation for an employee's discharge, and

it remains plaintiff's burden to prove the elements of the cause of

action." Clemons, 704 N.E.2d at 406. With this third element, the

Illinois Supreme Court in Clemons declined to "expand the tort of

retaliatory discharge by reducing plaintiff's burden of proving the

elements of the tort," as under the McDonnell-Douglas doctrine

applicable to federal law employment discrimination claims. Id. at

408; see also Gacek, 614 F.3d at 303 ("Illinois, however, doesn't

want to give plaintiffs in retaliatory discharge cases governed by

state law that leg up" as in McDonnell-Douglas).

### A. A Reasonable Jury Could Not Find that Plaintiff Proved a Retaliatory Discharge Claim.

The parties do not dispute the first element, that Plaintiff was

an employee of Defendant before his injury. See Clemons, 704

N.E.2d at 406. Therefore, the Court considers the parties'

arguments as to the second and third prongs in turn.

i.    **A Reasonable Jury Could Find that Plaintiff Exercised a Right Granted by the Act as Required to Prove a Retaliatory Discharge Claim.**

Defendant's Motion for Summary Judgment argues that "Plaintiff cannot prove that he exercised a right granted by" the Act. d/e 23, p. 5. Defendant cites to Plaintiff's testimony related to filing a workers' compensation claim: that he did not know of any employees of Defendant who knew he was going to file one, that Plaintiff never threatened to file one, that Plaintiff did not know prior to being terminated if he was going to file one, and that Plaintiff did not file one until after his termination. Id. at pp. 4-5.

Plaintiff argues in his Response that he "did exactly what the law protects": "(1) reported a workplace injury on February 3, 2022...(2) informed supervisors that he was not cleared to work or travel due to the injury...and (3) obtained and attempted to submit an off-work slip from a medical provider" before he was terminated. d/e 25, p. 9 (internal citations omitted).

Plaintiff cites to his testimony stating that the day after he fell out of the truck while on the job, he discussed it with Glen Wadford, one of his supervisors. See d/e 25, p. 9; d/e 25-8, pp. 5,

6, 9. Plaintiff next cites to his February 15, 2022 text message to Wadford stating that he was unable to work and had sought medical treatment after his fall. See d/e 25, p. 9; d/e 25-1, pp. 2-3. Plaintiff also cites to a February 15, 2022 note signed by chiropractor Tracey Biermann stating that "I have seen [Plaintiff] in my office and I have recommended he refrain from lifting, bending, twisting or driving for longer than 30 minutes for the next 2 weeks." See d/e 25, p. 9; d/e 25-3, p. 2. Plaintiff emailed Biermann's note to Tom Pergram, the head of Defendant's human resources department on February 17, 2022—after Defendant fired Plaintiff. See d/e 25-3, p. 1.

Illinois courts have found it "well-established that '[t]he fact that a plaintiff has not filed a [workers' compensation] claim in Illinois prior to her discharge does not preclude her from bringing a retaliatory discharge cause of action.'" Planell v. Whitehall N., L.L.C., 2015 IL App (1st) 140799, ¶ 60 (quoting Reinneck v. Taco Bell Corp., 297 Ill. App. 3d 211, 214 (1998); citing also Burgess v. Chicago Sun–Times, 132 Ill. App. 3d 181, 185 (1985) ("[T]here exists no requirement in Illinois that in order to state a viable cause of

action for retaliatory discharge, a plaintiff must plead that he was discharged in retaliation for filing a Workers' Compensation claim"); citing also Fuentes v. Lear Siegler, 174 Ill. App. 3d 864, 866 (1988) ("[I]t should be noted that Illinois does not require a plaintiff to plead that he was discharged for filing a worker's compensation claim.")).

Rather, Illinois courts have deemed it "sufficient that the plaintiff establish that []he was discharged in anticipation of [his] filing a workers' compensation claim." Planell, 2015 IL App (1st) 140799 at ¶ 60 (quoting Fuentes, 174 Ill. App. 3d at 866) (emphasis in original). Specifically, "it is enough if [a plaintiff] had sought medical attention for her injuries and that her employer discharged her for that assertion of her workers' compensation rights." Reinneck, 297 Ill. App. 3d at 214 (quoting Bray v. Stan's Rental, Inc., 196 Ill. App. 3d 384, 387 (1990)).

In Reinneck, the plaintiff "sought medical attention for her injuries, informed her Illinois supervisors about her injuries, and informed the same supervisors that she was hiring a lawyer to pursue her remedies." Reinneck, 297 Ill. App. 3d at 214. In Bray,

the plaintiff "immediately informed [his supervisor] of the accident," "saw his family physician a few days after the instant accident, [] was referred to a neurologist," and "notified [his supervisor] that he would not be in [to work] those days." Bray, 196 Ill. App. 3d at 385.

This Court finds that there remains a genuine issue of material fact as to whether Plaintiff "exercised a right granted by the Workers' Compensation Act." Clemons v. Mech. Devices Co., 704 N.E.2d 403, 406 (1998).

Wadford testified that, while he did not have a direct supervisory role over Plaintiff, he was above Plaintiff in a different division. See d/e 26-5, p. 3. Wadford also testified that while he was employed with Plaintiff prior to Plaintiff's termination, he did not have any knowledge that Plaintiff sustained an on-the-job injury— only that Plaintiff had a hernia he had not taken care of. Id. at p. 6.

Plaintiff testified that on the morning of February 2, 2022, Wadford, one of Plaintiff's supervisors, called him in for a snow removal job for the Burlington Northern Santa Fe Railway in Quincy, Illinois. See d/e 25-8, pp. 5, 6. Plaintiff testified that, on the way to the job, he stopped at Defendant's Quincy shop yard,

where he fell off the footrail of his company pickup truck. Id. at pp.

6, 7. Plaintiff also testified that the following day, he and Wadford

talked about him falling out of the truck, as well as Plaintiff's hernia

surgery. Id. at pp. 9-10.

Plaintiff provides evidence dated February 15, 2022 that he

received medical care and informed Wadford of it that day. See d/e

25-1, pp. 2-3; d/e 25-3, p. 2. The parties agree that Plaintiff

believes he was terminated on February 15 or 16, 2022. See d/e 23,

p. 2; d/e 25, p. 3.

In sum, a reasonable jury could find that Plaintiff "sought

medical attention for [his] injuries" in an "assertion of [his] workers'

compensation rights"—before Defendant could then fire him—in

satisfaction of the second element of a retaliatory discharge claim.

Reinneck, 297 Ill. App. 3d at 214 (quoting Bray, 196 Ill. App. 3d at

387 (1990)).

>   **ii.  A Reasonable Jury Could Not Find that Plaintiff's Firing was Causally Related to His Filing a Workers' Compensation Claim as Required to Prove a Retaliatory Discharge Claim.**

Defendant's Motion for Summary Judgment argues that

Plaintiff can not "prove the third element of his cause of action and

that his discharge was causally related to him filing a workers'
compensation claim" because Defendant "could not have terminated
Plaintiff for filing a workers' compensation claim, as [Defendant] did
not know anything about it." d/e 23, p. 5.

Defendant argues that "Defendant had no knowledge of
[Plaintiff's] alleged injury prior to his termination," pointing to
Wadford's testimony that he neither supervised Plaintiff nor knew
that Plaintiff sustained an on-the-job injury. Id.; see also d/e 26-5,
pp. 3, 6. Defendant also argues that "Plaintiff was terminated from
his employ with [Defendant] for cause," citing testimony from Tom
Pegram, Dennis Etnier, and Josh Prewett that Plaintiff was
terminated for theft and lack of performance. d/e 23, p. 5.

Plaintiff makes several assertions challenging Defendant's
proffered reason for firing him: that "Plaintiff's direct supervisor
confirmed that he was a reliable, hardworking employee with no
known performance issues," that "Defendant's own Personnel
Action Form says nothing about theft at the time of termination,"
that "Defendant's own corporate representatives and managers
admitted under oath that no investigation was conducted in

accordance with their company's standard theft protocol," and that "Defendant terminated Plaintiff without providing <u>any</u> reason." d/e 25, pp. 10-11 (emphasis in original).

Plaintiff does not allege, however, that any of Defendant's employees involved in his firing knew that Plaintiff was injured on the job and asserted his workers' compensation rights under the Act by seeking medical attention for his injuries. For example, Plaintiff does not allege that Wadford conveyed his alleged knowledge to Pegram, Etnier, or Prewett. While a reasonable jury could find that Defendant did not fire Plaintiff for theft as Defendant alleges, Plaintiff does not provide any evidence that Defendant had the necessary knowledge and, therefore, motive for Plaintiff's discharge to be "causally related to his filing a claim under the Workers' Compensation Act." <u>Clemons v. Mech. Devices Co.</u>, 704 N.E.2d 403, 406 (1998).

## V.    CONCLUSION

Because Plaintiff cannot prove all elements of a retaliatory discharge claim related to filing a claim under the Illinois Workers' Compensation Act, <u>see</u> <u>Clemons</u>, 704 N.E.2d at 406, Defendant's

Motion for Summary Judgment (d/e 22) is GRANTED. This Court

does not reach Defendant's raised issues of damages or res

judicata. Further, Defendant's Motion to Deem Defendant's

Statement of Material Facts Admitted (d/e 29) is DENIED and

Defendant's Motions In Limine (d/e 33) are DISMISSED as MOOT.


**IT IS SO ORDERED.**
**ENTERED: November 18, 2025.**
**FOR THE COURT**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**