E-FILED
Thursday, 10 September, 2026 03:22:39 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

**JASON COCA,** )
)
**Plaintiff,** )
)
**v.** ) **No. 23-cv-1433**
)
**PREWETT ENTERPRISES, INC.,** )
**d/b/a B&P ENTERPRISES,** )
)
**Defendant.** )

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court are Plaintiff Jason Coca's Motion to Alter or Amend the Court's Memorandum and Order Dated November 18, 2025 under Fed. R. Civ. P. 59(e) (d/e 40) and Defendant Prewett Enterprises' Memorandum in Opposition (d/e 41). Because the Court committed a manifest error of law when it failed to consider whether a supervisor's knowledge of protected activity could be imputed to the company, Plaintiff's Motion (d/e 40) is GRANTED.

## I. BACKGROUND

On November 30, 2023, Plaintiff filed a one-count Complaint (d/e 1) in this Court alleging that Defendant terminated Plaintiff's employment in retaliation for Plaintiff exercising his right to file a workers' compensation claim under the Illinois Workers' Compensation Act, 820 ILCS 305/1, et seq. ("the Act"), but under the pretext that Plaintiff was not performing according to expectations and allegedly committed fraud by purchasing gift cards with company funds but without company approval. See id., p. 2.

On April 1, 2025, Defendant filed a Motion for Summary Judgment (d/e 22) and Memorandum of Law in Support (d/e 23), to which Plaintiff filed a Response (d/e 25) on May 6, 2025, and to which Defendant filed a Reply (d/e 26) on May 20, 2025. On November 18, 2025, this Court issued an Order and Opinion (d/e 38) finding no genuine dispute of material fact as to whether Defendant retaliated against Plaintiff for exercising his rights under the Act and granting Defendant's Motion for Summary Judgment. The Court ruled for Defendant, holding that "a reasonable jury

could not find that plaintiff's firing was causally related to his filing a workers' compensation claim as required to prove a retaliatory discharge claim." d/e 38, p. 13. In other words, the Plaintiff failed to prove the causation element. The Court so ruled because the Plaintiff presented no evidence that the manager with knowledge of his injury (Glen Wadford, General Manager) communicated the same to the manager responsible for his termination (Josh Prewett, Chief Operating Officer).

On December 16, 2025, Plaintiff filed a Motion to Alter or Amend (d/e 40) this Court's Order and Opinion Granting the Defendant's Motion for Summary Judgment, to which Defendant filed a Memorandum in Opposition (d/e 41) on December 23, 2025. Plaintiff argues that "Illinois courts have long held that a plaintiff need not present direct evidence that the final decisionmaker personally possessed actual knowledge of a workers' compensation claim (or even an expressly stated intent to file one) to establish causation." d/e 40, p. 1. Relatedly, Plaintiff also argues that Illinois courts assess whether the managers' knowledge of the injury can be imputed to the employer, obviating the need to prove

that the managers with knowledge of the protected activity communicated this knowledge to the managers involved in the termination. Plaintiff therefore argues that the Court should have found a genuine dispute of material fact as to retaliatory intent without requiring evidence of communication between the knowledgeable and terminating managers.

Defendant argues that the Court should deny Plaintiff's motion because: (1) the Court correctly held that the lack of direct link between the knowledgeable and terminating managers precluded satisfaction of the causation element; and (2) Plaintiff has presented no new evidence of such a link. d/e 41, pp. 4-5.

## II. LEGAL STANDARD

Rule 59, subsection (e) allows a party to file a Motion to Alter or Amend a judgment within 28 days after entry. FED. R. CIV. P. 59(e). To establish relief under Rule 59(e), a "movant must demonstrate a manifest error of law or fact or present newly discovered evidence." Boyd v. Tornier, Inc., 656 F.3d 487, 492 (7th Cir. 2011); see also Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996) ("Rule 59(e) allows a party to direct the district court's

attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures.”). However, “a Rule 59(e) motion is not to be used to ‘rehash’ previously rejected arguments.” Vesely v. Armslist LLC, 762 F.3d 661, 666 (7th Cir. 2014).

The Illinois Workers' Compensation Act dictates employees’ and employers’ rights and liabilities in the context of employment injuries, including employees’ right to file a workers' compensation claim. See 820 ILCS 305/1, et seq. The Act specifically bars employers from retaliating against employees for exercising their rights under the Act. See 820 ILCS 305/4(h).

In Kelsay v. Motorola, Inc., the Illinois Supreme Court established a cause of action for retaliatory discharge to uphold and implement the public policy set out in the Act. 384 N.E.2d 353, 357 (1978). The Seventh Circuit Court of Appeals has held that such retaliatory discharge claims can be heard in federal court. See Spearman v. Exxon Coal USA, Inc., 16 F.3d 722 (7th Cir. 1994). “[W]hen a retaliatory discharge case governed by Illinois law is

litigated in a federal court, the federal court must apply the standard of the state law to a motion for summary judgment[.]" Gacek v. Am. Airlines, Inc., 614 F.3d 298, 303 (7th Cir. 2010).

An employee may recover damages for retaliatory discharge if he proves "(1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." Clemons v. Mech. Devices Co., 704 N.E.2d 403, 406 (1998); see also Brooks v. Pactiv Corp., 729 F.3d 758, 767 (7th Cir. 2013); Borcky v. Maytag Corp., 248 F.3d 691, 695-96 (7th Cir. 2001).

"In retaliatory discharge cases, an employer is not required to come forward with an explanation for an employee's discharge, and it remains plaintiff's burden to prove the elements of the cause of action." Clemons, 704 N.E.2d at 406. The "ultimate issue" on causation is "the employer's motive in discharging the employee." Id. (citing Hartlein v. Illinois Power Co., 601 N.E.2d 720, 730 (1992)). Accordingly, the plaintiff can carry his burden by showing that "defendant's explanation for [terminating Plaintiff] is not

believable or that it raises a genuine issue of fact as to whether defendant was retaliating against him." Herman v. Power Maint. & Constructors, LLC, 903 N.E.2d 852, 859, 862 (2009) (discussing the plaintiff's burden on summary judgment for the causation element). If the Court's assessment of the presence of a genuine dispute of a material fact hinges on the "credibility [of] plaintiff's testimony and that of his supervisor," the issue should be left to the trier of fact. Bray v. Stan's Rental, Inc., 553 N.E.2d 791, 793 (1990).

A plaintiff may also bring a federal claim for retaliation under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1983. For retaliation claims under Title VII, federal courts employ a burden-shifting framework with three steps: (1) the plaintiff must make out a prima facie case of retaliation; (2) if met, the burden shifts to the defendant to show evidence that employee was terminated for a valid purpose; (3) if met, the burden shifts back to plaintiff to demonstrate that a reasonable trier of fact could find a genuine dispute of a material fact as to the motive for termination. Clemons, 704 N.E.2d at 338 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)).

In Gacek, the Seventh Circuit elaborated on the distinction between the Illinois and federal McDonnell-Douglas standards:

> For suppose that in a case governed by McDonnell Douglas the employer fails to offer any reason for having fired the plaintiff. An inference would arise that the reason was the unlawful one alleged by the plaintiff. Yet in some cases the reason might be unknown to the employer (the actual firing having been done by a subordinate who may have left the company or be unwilling to cooperate in its investigation) or the employer might be unwilling to reveal the real reason because it would disclose an illegal or unethical or otherwise embarrassing practice (nepotism, for example, or blackmail) though one unrelated to the discrimination alleged in the suit. Then the plaintiff would win under McDonnell Douglas without more, but under the Illinois rule he would have to prove that the alleged discrimination was the cause of his being fired.

Gacek, 614 F.3d at 301 (internal citations omitted). Accordingly, plaintiffs bringing retaliation claims under federal law may have an easier time avoiding summary judgment. Id. at 303 ("Illinois . . . doesn't want to give plaintiffs in retaliatory discharge cases governed by state law that leg up" of only having to make out a prima facie case in the first instance).

While the evidentiary burdens differ, federal and state courts rely on the same types of evidence to assess whether there is a genuine dispute of material fact as to retaliatory intent. Such

evidence includes suspicious timing between the defendant's learning of the protected activity and the retaliatory action, shifting explanations for the termination, and the defendant's words and actions. Castro v. DeVry Univ., Inc., 786 F.3d 559, 565, 577 (7th Cir. 2015) (7th Cir. 2009) (applying federal law); Herman, 903 N.E.2d at 862 (applying state law); Reinneck v. Taco Bell Corp., 696 N.E.2d 839, 845-46 (1998) (applying state law).

## III. ANALYSIS

A Motion to Alter or Amend can only be granted where the movant presents newly discovered evidence or where the Court commits manifest error of law or fact. Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996). Plaintiff's Motion to Alter does not present new evidence and does not argue that the Court committed any error of fact. See d/e 38. Accordingly, the only grounds on which Plaintiff's Motion to Alter can be granted is a manifest error of law.

The issue is whether proving causation under Illinois law requires proof of communication between managers with knowledge of the protected activity and managers involved in the termination.

The Court initially held that it does. d/e 38, pp. 13-14. Upon further review, the Court believes that it committed a manifest error of law by imposing this requirement, and relatedly by failing to consider whether knowledge can be imputed from the knowledgeable managers to the company.

**A. Illinois Law**

The Court cannot find binding precedent expressly holding that Plaintiff must provide evidence of a direct link between the knowledgeable and terminating managers under Illinois law. Conversely, the Court has found binding precedent holding that Illinois courts recognize that knowledge may be imputed from an agent-employee to the principal-employer, provided that: (1) the agent was acting within the scope of her official duties; (2) the issue concerns a matter within the scope of the agent's authorities; and (3) no relevant exceptions apply. Zeman v. N. Am. Union, 105 N.E. 22, 26 (1914); Chicago J. Co. v. Indus. Comm'n, 136 N.E. 697, 698 (1922) (describing how even some facts the agent learned before his agency commenced can be imputed to the company); O'Donnell v. Henley, 158 N.E. 692, 693 (1927); Campen v. Exec. House Hotel,

Inc., 434 N.E.2d 511, 517 (1982); Lease Resol. Corp. v. Larney, 719 N.E.2d 165, 170 (1999) ("Generally, an agent's knowledge is imputed to the principal."); McRaith v. BDO Seidman, LLP, 909 N.E.2d 310, 331 (2009); see also O'Connor v. Ford Motor Co., 567 F. Supp. 3d 915, 941 (N.D. Ill. 2021) ("When applying state law, the Court is 'bound by the decisions of the state's highest court.'") (quoting In re Emerald Casino, Inc., 867 F.3d 743, 765 (7th Cir. 2017)).

Further, the Seventh Circuit recognizes that knowledge may be imputed from an agent to the principal under Illinois law. Ash v. Georgia-Pac. Corp., 957 F.2d 432, 436 (7th Cir. 1992); Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp., 665 F.3d 897, 903 (7th Cir. 2011); NECA-IBEW Rockford Loc. Union 364 Health & Welfare Fund v. A & A Drug Co., 736 F.3d 1054, 1059 (7th Cir. 2013) ("corporations know what their employees know") (internal quotations omitted).

Finally, district courts in the Seventh Circuit have denied motions for summary judgment after concluding that Illinois law does not require proof of communication between managers with

knowledge of the protected activity and the managers involved in the termination. Napoli v. Bd. of Trs. of Thornton Cmty. Coll., 1986 WL 6263, at *4-5 (N.D. Ill. May 23, 1986) (distinguishing Illinois law on the imputation of knowledge and holding that the "presumption" that individual board trustees communicated knowledge of plaintiff's protected activity to the full board was "not an untenable one").

But knowledge is not imputed as a matter of law. Rather, it is a "question of fact which takes into account the nature of the information, the circumstances in which the agent received it, and the agent's position in the corporate hierarchy." Installation Servs., Inc. v. Elecs. Rsch., Inc., 2005 WL 3180129, at *3 (N.D. Ill. Nov. 23, 2005); Zeman, 105 N.E. at 26; Rivas v. Benny's Prime Chophouse, LLC, 2025 IL App (1st) 242044, ¶ 72, appeal denied, 274 N.E.3d 109 (Ill. 2026).

For example, in Napoli, the plaintiff was a supervisor in the athletics department of a community college. Napoli v. Bd. of Trs. of Thornton Cmty. Coll., 1985 WL 2428, at *1-2 (N.D. Ill. Sept. 4, 1985); Napoli, 1986 WL 6263, at *1. She discovered apparent

misconduct by college employees and discussed her findings with individual members of the Board of Trustees. Napoli, 1985 WL 2428, at *1-2. After the Board eliminated her position by majority vote, she brought claims for retaliatory discharge under Illinois law and related claims under Title VII and § 1983. Id.; Napoli, 1986 WL 6263, at *4. The defendants moved for summary judgment, arguing that not all of the board members who voted to eliminate her position had knowledge of her protected activities. Napoli, 1986 WL 6263, at *1-2. Though the plaintiff initially did not refute this, after the Court granted summary judgment to defendants on some claims, the plaintiff then argued that the full board could be held liable because the individual trustees' knowledge of her protected activities could be imputed to the full board, provided the individual members acquired the information while acting within the scope of their agency. Napoli, 1985 WL 2428 at *1, 9; Napoli, 1986 WL 6263, at *1. For the retaliatory discharge claim under Illinois law, the Court held that "the presumption" that individual trustees communicated their knowledge of plaintiff's protected activity to the full board was "not [] untenable" because the knowledge they

obtained was directly related to their positions. Napoli, 1986 WL 6263, at *4. In other words, the court found a genuine dispute of material fact as to retaliatory intent without requiring an express communication between the trustees with knowledge of her protected activities and the trustees that voted to eliminate her position because the presumption that the information was imputed to the full board was reasonable based on the circumstances. Id.

Though not required for this ruling, the Court notes that the policy goals of the Illinois Workers' Compensation Act help to explain why courts permit a fact finder to consider whether supervisors' knowledge can be imputed to the company. The Act is aimed at holding companies responsible, not individual managers. The focus on companies helps to explain why knowledge is imputed from one manager to the company (not to individual managers) and why plaintiffs can only sue the company (not individual managers) in most circumstances. As the Supreme Court of Illinois explained in Buckner v. Atl. Plant Maint., Inc.:

> This emphasis on tempering the power *of the employer* is not surprising. Logically speaking, only "the employer" has the power to hire or fire an employee. Obviously, an agent or employee of the employer may carry out that function

> on the employer's behalf, but it is still the authority of *the employer* which is being exercised. If the discharge violated public policy, it is the employer who is rightly held liable for damages. The purpose underlying the recognition of retaliatory discharge actions is therefore fully served by allowing actions only against the employer.

694 N.E.2d 565, 569-70 (1998) (emphases in original). The same goes for federal employment retaliation claims under Title VII. Sanchez v. Magnum Ins. Agency Co., 2001 WL 856620, at *2 (N.D. Ill. July 30, 2001) ("As a general rule, individual supervisors . . . cannot be held personally liable for actions which subject the employer to Title VII liability.").

By contrast, retaliation claims under 42 U.S.C. § 1983 concern retaliation for the exercise of constitutional rights, not statutory rights. For § 1983 claims, courts will not impute knowledge because such actions "require[] personal involvement in the alleged constitutional deprivation." Valdez v. City of Chicago, 2022 WL 4482816, at *6 (N.D. Ill. Sept. 27, 2022) (internal citations omitted). That courts specifically require personal knowledge for retaliation claims for the exercise of constitutional rights comports with the fact that Courts do not require personal knowledge for retaliation claims for the exercise of statutory rights. Id.; Napoli,

1986 WL 6263, at *4 ("While we refused to accept plaintiff's agency and corporate law arguments in support of her § 1983 action, those same arguments have merit" under Illinois law); see also Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (No circuit "has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity" for Title VII retaliation claims).

**B. Analysis**

In the Court's Order and Opinion granting Defendant's Motion for Summary Judgment (d/e 38), the Court required proof that Glen Wadford, the manager with knowledge of Plaintiff's injury, communicated this knowledge to Josh Prewett, the terminating manager. d/e 38, pp. 13-14. Instead, the Court should have considered whether a reasonable factfinder could presume that Wadford's knowledge could reasonably be imputed to the company based on the nature of the information Wadford learned, the circumstances under which he learned it, and his position as a

supervisor at B&W Enterprises. Zeman, 105 N.E. at 26; Campen, 434 N.E.2d at 517; Installation Servs., 2005 WL 3180129, at *3.

The Court holds that a reasonable factfinder could conclude that Wadford's knowledge was imputed to the company based on the circumstances. Plaintiff asserted that he first informed Wadford of his injuries at B&W's location in Quincy, Illinois, on February 3. d/e 25, p. 9. Plaintiff was in Quincy and informed Wadford because Wadford asked him to perform work there. The second communication—the text message to Wadford on February 15—occurred not long after Wadford called Plaintiff on February 15, which Plaintiff asserted was in response to a request that he drive to and work in Birmingham, Alabama. d/e 25-8, p. 12. Wadford also agreed that his job entailed ensuring that people have the staff and equipment necessary to complete their work. d/e 25-10, p. 3. The information Wadford learned fell within the scope of his job, and he was informed because of his status as a supervisor in the corporate hierarchy. Id.; Zeman, 105 N.E. at 26; Campen, 434 N.E.2d at 517; Installation Servs., 2005 WL 3180129, at *3. Therefore, a reasonable factfinder could infer that Wadford informed

the company of Plaintiff's injury based on what, how, and why he learned of it.

## IV. Defendant's Motion for Summary Judgment

Having concluded that the Court committed a manifest error of law by failing to consider whether a reasonable factfinder could impute knowledge from Wadford to the company, and having concluded that a reasonable trier of fact could find that Wadford's knowledge was imputed to the company, the Court now assesses whether Defendant has established that there is no genuine dispute of a material fact as to retaliatory intent.[1]

### A. Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. Carroll v. Lynch, 698

[1] The Court initially held that a reasonable factfinder could hold that Plaintiff exercised a right granted by the Illinois Workers' Compensation Act, and there is no dispute that Plaintiff was an employee before his injury. See d/e 38, pp. 8-9. Therefore, causation is the only remaining element.

F.3d 561, 564 (7th Cir. 2012). When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Woodruff, 542 F.3d at 550. "At summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Wauconda Healthcare & Rehab. Ctr., LLC, 464 F.3d 659, 664 (7th Cir. 2006) (internal citations omitted). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013). After the moving party does so, the nonmoving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quotation and footnotes omitted).

**B. Analysis**

Under Illinois law, the "ultimate issue" on causation is "the employer's motive in discharging the employee." Clemons, 704 N.E.2d at 406 (citing Hartlein, 601 N.E.2d at 730). Plaintiff can carry his burden by showing that "defendant's explanation for [terminating Plaintiff] is not believable or that it raises a genuine issue of fact as to whether defendant was retaliating against him." Herman, 903 N.E.2d at 862. If the Court's assessment of the presence of a genuine dispute of a material fact hinges on the "credibility [of] plaintiff's testimony and that of his supervisor, the issue should be left to the trier of fact." Bray, 553 N.E.2d at 793. The Court considers evidence of suspicious timing between the employer's learning of the protected activity and the Plaintiff's termination, shifting explanations for his termination, and other statements and conduct by Defendant. Castro, 786 F.3d at 565, 577; Reinneck, 696 N.E.2d at 842-44; Herman, 903 N.E.2d at 862; Quinones v. Craftsman Plating & Tinning Corp., 2018 IL App (1st) 180745-U., at *7-8.

**i. Plaintiff's injury and notice to Defendant**

As stated, Plaintiff asserted that he twice informed Wadford of his fall off the truck, verbally on February 3 and by text on February 15. See d/e 25, p. 9; d/e 25-1, pp. 2-3. However, Plaintiff also had an unresolved hernia, and a separate fall in the bathtub may have played a role in his back pain. d/e 25-8, pp. 10, 13.

Despite Plaintiff's producing evidence of the February 15 text message, Wadford stated that he did not receive this text, but acknowledged he "could have." d/e 23-6, pp. 8-9. He also stated that he did not remember having called Plaintiff on February 15, but did not dispute that it could have happened and noted that he had 19 people working for him and received about 400 calls per day. Id. Wadford also testified that he recalled discussing Plaintiff's hernia on February 3, but not Plaintiff's slipping off the truck the day before. d/e 25-10, p. 3. Prewett acknowledged hearing a "rumor" of an injury, though the question to which he provided that answer mentioned only the hernia and Plaintiff's falling in the bathtub, not falling off the truck. d/e 25-11, p. 8.

**ii. Suspicious Timing**

Plaintiff testified that his company credit card and messenger chat were turned off "within the hour" of his notifying Wadford of his injury on February 15. d/e 25-8, p. 17. Plaintiff therefore believes he was formally terminated on February 15, or alternatively on February 16, when Defendant picked up Plaintiff's truck. d/e 23, p. 2; d/e 25, p. 3.

Defendant asserts that it was contemplating taking action against Plaintiff before learning of his injuries. Specifically, Defendant was allegedly monitoring Plaintiff's poor performance and investigating his alleged theft. d/e 23, p. 6; d/e 25-4, p. 6. But Defendant offers only the testimony of its own employees to support this claim. While producing documentary evidence is not strictly required, it is Defendant's burden to demonstrate that there is no genuine dispute of material fact. Further, Illinois courts cite the absence of written evidence of the Defendant's stated reasons for termination as supportive of inferences about the Defendant's motive. Reinneck, 696 N.E.2d at 846. By presenting evidence that he was terminated soon after informing Defendant of his injuries in

writing, Plaintiff has presented the sort of "suspicious timing" evidence that a trier of fact may consider in determining whether there is a genuine dispute of material fact as to retaliatory intent. Reinneck, 696 N.E.2d at 845-46; Quinones, 2018 IL App (1st) 180745-U, at *7-8.

**iii. Shifting explanations**

Plaintiff asserted that he was never told why he was terminated, an assertion not disputed by any of Defendant's employees. See d/e 23, p. 2; d/e 25, p. 4. Defendant asserts that Plaintiff was terminated for poor performance, as shown by GPS tracking data indicating that Plaintiff was not leaving his house to generate business. d/e 25-4, p. 8. Defendant also asserts he was terminated for theft for his purchase of Walmart gift cards with the company credit card.

**a. Performance issues**

Prewett, Defendant's COO and the executive responsible for the decision to terminate Plaintiff, stated that poor performance was a "major issue." d/e 25-11, p. 9. Prewett also asserted that Plaintiff was required to fill out sales reports, which are not

required for employees performing to satisfaction. Id., p. 4. Finally, Prewett asserted that Carl Paulino, Plaintiff's former direct supervisor, had instructed Plaintiff to improve his performance. Id. at 3.

For his part, Plaintiff asserts that Prewett told him that he was doing a "good job" as recently as December 2021 and that he did not receive any admonition to improve his performance. d/e 25-8, p. 14. Prewett and Thomas Pegram, a supervisory manager in Defendant's department of human resources, agreed that there were no written reviews or documents describing Plaintiff's poor performance. d/e 25-11, p. 8 (Prewett); d/e 25-7, p. 9 (Pegram). Though Prewett and Pegram stated that many conversations are handled verbally at B&P, Pegram also stated that a record of discipline would be in Plaintiff's file "if he was" disciplined. d/e 25-7, p. 9. Without weighing whether Plaintiff or Defendant is more credible—or which of Defendant's employees is most credible—the Court holds that Plaintiff has presented evidence of shifting explanations that a trier of fact could use to find a genuine dispute of material fact as to retaliatory intent.

**b. Theft**

Defendant asserts that Plaintiff was also terminated in part for alleged theft when he purchased gift cards with the company credit card. d/e 23, p. 1. Dennis Etnier, Defendant's Chief Financial Officer (CFO), testified that, if theft were a basis for termination, it would be noted on the "Personnel Action Form" documenting Plaintiff's termination. d/e 25-4, pp. 2, 7. Etnier filled out and signed the form, and knew that the alleged theft was a basis for Plaintiff's termination, but listed "failure to perform" as the only reason for termination. d/e 25-4, pp. 7-8; d/e 25-5. Prewett and Etnier testified that the company would normally question the employee accused of theft before terminating him, but neither could confirm that this had occurred. d/e 25-11, p. 5 (Prewett agrees that potential theft would trigger an investigation and questioning of the employee, and documentation thereof); d/e 25-4, p. 6 (Etnier "assuming" that someone questioned Plaintiff). This is significant because Prewett and Etnier agreed that Prewett would adopt Etnier's conclusions on whether the purchases amounted to theft. d/e 25-4, p. 6 Defendant's employees also could not confirm that

there was any documentary evidence of such an investigation besides the credit card transaction statements the company received in the normal course of business. These statements show that Coca purchased the gift cards, not that the purchase constituted theft.

Further, Prewett stated that the gift card purchases permitted "immediate [] termination" in light of Plaintiff's performance issues. d/e 25-11, p. 9. But Prewett also agreed that it was a "normal occurrence" for gift cards to be purchased for clients around the holidays, which Plaintiff alleged was the reason for his purchases (Plaintiff purchased the gift cards on December 2, 2021). d/e 25-11, p. 6; d/e 25-9 (transaction records); d/e 25-8, p. 24 (Plaintiff explains that he was instructed to buy the gift cards by his manager). Etnier, Pegram, and Wadford also either acknowledged or did not refute that company employees sometimes bought gift cards for clients around the holidays. d/e 25-4, p. 6 (Etnier states that he could not say that purchasing gift cards never happened); d/e 25-7, p. 8 (Pegram states that B&P purchased gift cards for clients "on occasion"); d/e 25-10, p. 6 (Wadford states that

individual B&P offices can purchase gift cards if they "choose to do that").

**C. The Court finds a genuine dispute of material fact as to retaliatory intent.**

In Bray, the Court stated that, if the presence of a genuine dispute of a material fact hinges on the "credibility [of] plaintiff's testimony and that of his supervisor, the issue should be left to the trier of fact." Bray, 553 N.E.2d at 793.

That is what is before the Court. Plaintiff and Defendant offer conflicting or internally inconsistent evidence on several issues related to the assessment of retaliatory intent. On each of these issues, a trier of fact could reasonably rule for Plaintiff. First, Plaintiff and Defendant offer conflicting testimony on the timing and extent to which Plaintiff informed Defendant of his injury. Plaintiff produced evidence that he notified Wadford of his injury before he suffered the allegedly retaliatory action. Wadford did not recall receiving the message, but he could not rule it out given his volume of work communications.

Second, Plaintiff was apparently given no explanation for his firing, though Defendant asserts two reasons for doing so.

Third, Plaintiff and Defendant offer conflicting testimony regarding poor performance, mainly whether Plaintiff was advised to improve his performance. Even if he were admonished, Defendant produced no written performance reviews or other documentary evidence of the admonition or poor performance. Reinneck, 696 N.E.2d at 846. In Herman, the mismatch between the stated reason for termination and the defendant's written performance reviews was sufficient to find a genuine dispute of material fact as to retaliatory intent. Herman, 903 N.E.2d at 862 (describing the mismatch and stating that a reasonable trier of fact could infer from it that (1) "defendant gave a false reason for its [retaliatory action]" and (2) "defendant gave this false reason because the real reason [] was illegal and actionable").

Fourth, Plaintiff presented evidence that Defendant departed from its normal practice by not documenting the investigation of his alleged theft and by not listing theft as a reason for termination in his personnel file. Additionally, several employees—including the executive responsible for the decision to terminate Plaintiff—

acknowledged that Defendant sometimes allowed gift card purchases for the same reason Plaintiff allegedly purchased them.

Accordingly, the Court holds that there is evidence of suspicious timing, shifting or conflicting explanations, and departures from company policy sufficient for a reasonable factfinder to infer retaliatory intent on the part of Defendant. Defendant has not carried its burden of demonstrating that there is no genuine dispute of material fact.

## V. CONCLUSION

Because the Court committed a manifest error of law when it failed to consider whether a reasonable trier of fact could impute knowledge from Wadford to the company, the Plaintiff's Motion to Alter under Fed. R. Civ. P. 59(e) (d/e 40) is GRANTED.

Therefore, the Court's Opinion and Order granting the Defendant's Motion for Summary Judgment to Defendant (d/e 38) is VACATED.

Because the Defendant has not shown that there is no genuine dispute of a material fact, the Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**
**ENTERED: September 10, 2026.**
**FOR THE COURT**

**/s/ Sue E. Myerscough**
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**